**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| HERSHEL OSCAR ROSENBAUM, C.R., and J.R., <br><br>    Plaintiffs, <br><br>vs. <br><br>WASHOE COUNTY, DENNIS BALAAM, in his official capacity, MICHAEL HALEY, in his official capacity, and JAMES FORBUS, in his individual capacity, <br><br>    Defendants. | 3:08-CV-418-ECR-RAM <br><br> **Order** |

This case arises out of the arrest of Plaintiff Hershel Oscar Rosenbaum ("Rosenbaum") by a Washoe County Deputy Sheriff on August 26, 2006. When he was arrested, Rosenbaum was in the company of his children, C.R. and J.R. — aged eight and four, respectively, at the time — who are also plaintiffs in this action. Plaintiffs allege, among other things, that Rosenbaum's arrest and related events violated various constitutional rights enjoyed by Plaintiffs.

Now before the Court is the motion for summary judgment ("MSJ") (#23) filed by Defendants Washoe County, Michael Haley, and James Forbus.[1] The motion is ripe, and we now rule on it.

---

[1] The remaining defendant, Dennis Balaam, has already been dismissed from this action. (See Minute Order (#11); Notice (#13).)

## I. Factual and Procedural Background

Rosenbaum acquired a number of free promotional tickets for admission to the Nevada State Fair distributed by the Reno radio station KOZZ. (Compl. ¶ 14 (#1); MSJ at 4 (#23).) On the afternoon of August 26, 2006, Rosenbaum went to a location across the street from the entrance of the fairgrounds with his children, C.R. and J.R. (Compl. ¶ 13 (#1); MSJ at 4 (#23).) While there, Rosenbaum sold some of the promotional tickets to passers by at a price of $5 per ticket. (Compl. ¶ 14; MSJ at 5 (#23).) At the time, Rosenbaum was wearing a t-shirt bearing the KOZZ logo. (Probable Cause Aff., MSJ Ex. B (#23-2).)

At approximately 6:30 p.m. on August 26, 2006, Defendant James Forbus ("Forbus"), who is employed as a Deputy Sheriff Lieutenant by the Washoe County Sheriff's Department, responded to a complaint by State Fair personnel that an individual was attempting to sell free promotional tickets. (Compl. ¶ 24 (#1); MSJ at 5 (#23).) After speaking with three witnesses — customers of Rosenbaum — and calling for backup, Forbus made contact with Rosenbaum. (Compl. ¶ 24 (#1); MSJ at 5 (#23).) Forbus confirmed with one of the witnesses that Rosenbaum was the individual from whom she had bought tickets, held a brief conversation with Rosenbaum, and then placed Rosenbaum under arrest. (Compl. ¶ 25 (#1); Probable Cause Aff., MSJ Ex. B (#23-2).)

C.R. and J.R. were released to their mother, who was in a vehicle parked a short distance away from the location where Rosenbaum was arrested. (Compl. ¶ 28 (#1); MSJ at 7 (#23).) As C.R. and J.R. were being escorted from the site of the arrest to their mother, Forbus (and perhaps others) spoke to them. Forbus

2

1  stated to them that what their father had done "was wrong," that
2  "you know what your father did was wrong," and that their father was
3  going to jail for what he had done.  (Compl. ¶ 27 (#1); MSJ at 6
4  (#23).)  The children were also asked whether they knew the
5  difference between right and wrong, whether their father had been
6  selling the tickets, and whether they knew what their father had
7  done was wrong.  (Compl. ¶ 27 (#1); MSJ at 6 (#28).)
8     Rosenbaum was booked on felony charges of obtaining money by
9  false pretenses and abuse, neglect or endangerment of a child, as
10 well as a misdemeanor charge of obtaining money under false
11 pretenses.  (Compl. ¶ 25 (#1); MSJ at 7 (#23).)  Rosenbaum was
12 released on bail the following day.  (Compl. ¶ 28 (#1); MSJ at 7
13 (#23).)  The Washoe County District Attorney's Office would later
14 charge Rosenbaum only with one felony count of obtaining money by
15 false pretenses, and that charge too was ultimately dropped.
16 (Compl. ¶¶ 32, 33 (#1); MSJ at 8 (#23).)
17    On August 26, 2006, Forbus prepared and issued a press release,
18 including the booking photo of Rosenbaum, encouraging other
19 witnesses — that is, others who had bought tickets from Rosenbaum —
20 to contact the Washoe County Sheriff's Office.  (Compl. ¶¶ 30, 31
21 (#1); MSJ at 7 (#23).)  A second press release was apparently issued
22 on August 31, 2006; Plaintiff alleges that Forbus and Defendant Mike
23 Haley ("Haley") are responsible for preparing and issuing the August
24 31, 2006, press release.  (Compl. ¶¶ 57, 58.)
25    This lawsuit was filed on August 1, 2008.  Plaintiffs'
26 Complaint (#1) asserts nine causes of action: (1) "False Arrest,
27 Unlawful Detention, False [I]mprisonment and Malicious Prosecution
28

3

Pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983"; (2) "Violation of Substantive and Procedural Due Process Right to Familial Integrity, and of Liberty Interest to Rear Children Without Unreasonable Government Interference"; (3) "Libel" (based on the August 26, 2006, press release); (4) "Libel" (based on the August 31, 2006, press release); (5) "Assault"; (5) "Battery"; (6) "Intentional Infliction of Emotional Distress"; (7) "Negligent Infliction of Emotional Distress"; (8) "False Arrest"; and (9) "False Imprisonment."  Plaintiffs seek damages "in an amount in excess of $10,000" on each of these causes of action.

Defendants' motion for summary judgment (#23) was filed on July 10, 2009.  Plaintiffs opposed (#28) the motion (#23), and Defendants replied (#29).

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could differ on the material facts at issue,

4

however, summary judgment should not be granted. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. F<small>ED</small>. R. C<small>IV</small>. P. 56(c); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. <u>Anderson</u>, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly

5

preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

### III. Discussion

Defendants argue that Plaintiffs constitutional rights were not violated and that they are entitled to qualified immunity on Plaintiffs' constitutional claims. Qualified immunity serves to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity is immunity from suit, not merely from liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In accordance with Saucier v. Katz, 533 U.S. 194 (2001), "the first inquiry" in evaluating qualified immunity "must be whether a constitutional right would have been violated on the facts alleged." Id. at 200. Then, if we determine that Defendants violated Plaintiffs' constitutional rights, we must explore "whether the right was clearly established." Id. The sequential analysis described in Saucier, however, is no longer mandatory; rather, the question of which of the first two prongs of the qualified immunity analysis should be addressed first is left to our discretion. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). Finally, we assess whether it

6

would be clear to a reasonable person in the defendant's position that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 205; see also Frederick v. Morse, 439 F.3d 1114, 1123 (9th Cir. 2006) (characterizing this final inquiry as a discrete third step in the analysis). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

**A. Rosenbaum's Arrest Lacked Probable Cause**

Plaintiffs' compound first cause of action asserts claims of false arrest, unlawful detention, false imprisonment and malicious prosecution, all premised on the allegation that Rosenbaum was arrested without probable cause. "[P]robable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." United States v. Noster, 590 F.3d 624, 629-30 (9th Cir. 2009). Probable cause exists so long as the arresting officer has probable cause to arrest the suspect for any criminal offense, regardless of the stated reason for the arrest. Davenpeck v. Alford, 543 U.S. 146, 153-155 (2004). Nevertheless, an arrest is still unlawful unless probable cause existed under a specific criminal statute. Id. at 156.

Defendants do not contend that Forbus had probable cause to arrest Rosenbaum for abuse, neglect or endangerment of a child. Rather, Defendants argue that Forbus had probable cause to arrest

7

1 Rosenbaum for violating one of two Nevada criminal statutes by
2 selling the promotional tickets: Nev. Rev. Stat. § 205.380 ("section
3 205.380"), obtaining money by false pretenses, or Nev. Rev. Stat. §
4 205.415 ("section 205.415"), collecting for benefit without
5 authority.  We shall examine these statutes, and the facts relating
6 to probable cause under each of them, separately.

7     1. Section 205.380

8     Section 205.380 provides that "[a] person who knowingly and
9 designedly by any false pretense obtains from any other person . . .
10 money . . . with the intent to cheat or defraud the other person, is
11 a cheat, and, unless otherwise prescribed by law, shall be
12 punished . . . ."  Nev. Rev. Stat. § 205.380.  The elements of the
13 crime are thus (1) intent to defraud, (2) a false representation,
14 (3) reliance on that representation, and (4) that the victim be
15 defrauded.  Barron v. State, 783 P.2d 444, 449 (1989).

16     Defendants' arguments that there was probable cause to arrest
17 Rosenbaum under section 205.380 are unpersuasive.[2]  Among other
18 things, there is no evidence that Rosenbaum was acting with an
19 intent to cheat or defraud his customers.  His customers believed
20 they were buying tickets to the State Fair, and that is exactly what
21 they received; Rosenbaum was not, for example, selling counterfeit
22 tickets.  There is no reasonable basis for believing that Rosenbaum
23 was misrepresenting himself as a representative of KOZZ to receive a
24 premium price on the tickets as does, to take Defendants' example, a
25 seller who falsely claims an item to have been owned by a celebrity.

---

[2] Defendants concede that obtaining money under false pretenses "is not the best charge."  (MSJ at 13 (#23).)

8

(See Defs.' Reply at 6-7 (#29).)  His sale of the tickets for $5 when he had acquired them for free is hardly evidence of intent to defraud — every merchant tries to buy low and sell high.  Thus, the facts known to Forbus did not give rise to probable cause that Rosenbaum was violating section 205.380.

### 2. Section 205.415

Section 205.415, which is entitled "Collecting for benefit without authority," provides as follows:

> A person who sells one or more tickets to any ball, benefit or entertainment, or asks or receives any subscription or promise thereof, for the benefit or pretended benefit of any person, association or order, without being authorized thereto by the person, association or order for whose benefit or pretended benefit it is done, shall be punished . . . .

NEV. REV. STAT. § 205.415. Defendants read the language of this statute so that "for the benefit or pretended benefit" modifies the word "tickets": because Rosenbaum was wearing a KOZZ t-shirt, Defendants argue, "he was at the very least implying that he was selling the tickets for the benefit or the pretended benefit of KOZZ."  (Defs.' Reply at 9 (#29).)  Defendants assert that the Nevada State Fair falls under the description "entertainment." Rosenbaum was not authorized to sell the promotional tickets to the fair for the benefit of KOZZ.  Thus, Defendants contend that there was probable cause to believe that Rosenbaum was violating this statute.  If we agreed with Defendants' interpretation of section 205.415, we would agree with Defendants that there was probable cause for the arrest.

There is an ambiguity in the language of the statute, however, which the parties have not addressed.  The phrase "for the benefit

9

or pretended benefit of any person" could just as easily modify "any ball, benefit or entertainment," instead of "tickets."  Reading the statute in this manner, an element of the crime would be that the "ball, benefit or entertainment" to which the defendant sold a ticket must have been "for the benefit or pretended benefit of any person, association, or order" — that is to say, the tickets at issue must be for an actual or purported charity event for the statute to apply.

There is no published authority, either state or federal, construing section 205.415.  Since the Nevada Supreme Court has not addressed the issue, we must "make a reasonable determination of the result the [Nevada Supreme Court] would reach if it were deciding the case."  Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 885 n.7 (9th Cir. 2000) (quoting Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993)).  Therefore, "we must use our best judgment to predict how that court would decide it."  Capital Dev. Co. v. Port of Astoria, 109 F.3d 516, 519 (9th Cir. 1997) (quoting Allen v. City of Los Angeles, 92 F.3d 842, 847 (9th Cir. 1996)).

There is no legislative history that sheds light on the meaning of section 205.415.  The statute is codified, however, under the title "Collecting for benefit without authority."  This title suggests that the second of the two possible constructions discussed above, requiring the event at issue to be an actual or purported charity event, is more appropriate.  We predict that the Nevada Supreme Court would so construe section 205.415.

There is no reasonable basis for concluding that the Nevada State Fair is a charity event, as would be required under our

10

interpretation of section 205.415, so Rosenbaum's sale of tickets to the fair does not fall under section 205.415.  Thus, section 205.415, too, does not provide an objective basis for Rosenbaum's arrest.  We conclude, therefore, that probable cause did not exist for Rosenbaum's arrest.

**B. Defendants are Entitled to Qualified Immunity for the Arrest**

Having decided that Rosenbaum was arrested without probable cause, in violation of his constitutional rights, we must next determine whether Defendants are nonetheless entitled to qualified immunity because the right at issue was not clearly established. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal citations and quotation marks omitted).  Of course, it is clearly established that arresting an individual without probable cause violates the individual's constitutional rights. With regard to qualified immunity, however, "the right the official is alleged to have violated must have been 'clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Hope v. Pelzer,

11

536 U.S. 730, 739 (2002) (quoting Anderson, 483 U.S. at 640) (internal citation omitted).

As discussed above, section 205.415 is ambiguous. Under the interpretation suggested by Defendants, there was probable cause to arrest Rosenbaum; under the interpretation that we predict the Nevada Supreme Court would adopt, there was not. Both interpretations, however, are plausible readings of the statutory language. It has been nearly a century since section 205.415 became law as part of the Criminal Practice Act of 1911, but no court has previously attempted to resolve this ambiguity — at least no court has published its attempt to do so. In such a circumstance, we cannot say that Nevada law was clearly established, or that the unlawfulness of arresting a person in the circumstances of this case under section 205.415 would have been apparent to a reasonable police officer. As such, Defendants are entitled to qualified immunity with regard to the lack of probable cause justifying Rosenbaum's arrest.

## C. Plaintiffs' Due Process Rights Were Not Violated

Plaintiffs' second cause of action asserts that "Plaintiffs have a constitutionally guaranteed right to familial integrity protected by substantive and procedural due process, and Plaintiff Hershel Rosenbaum has a liberty interest in the right to rear his children without unreasonable governmental interference." (Compl. ¶ 43 (#1).) Plaintiffs assert that the right to familial integrity was violated by "the false and disparaging statements made and questions posed to Plaintiffs C.R. and J.R." (Id. ¶ 44.) Rosenbaum was allegedly deprived of his liberty interest in "the

12

custody, care and management of his children" when Forbus arrested him without probable cause, taking C.R. and J.R. from Rosenbaum's custody and releasing them to Rosenbaum's wife, the mother of the children. (Id. ¶ 45.) We will examine each of these allegations separately.

### 1. Rosenbaum's Children Were Not Removed From His Custody in Violation of his Constitutional Rights

"Parents and children have a well-elaborated constitutional right to live together without governmental interference." Burke v. County of Alameda, 586 F.3d 725, 731 (9th Cir. 2009) (quoting Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." Id.

Plaintiffs' assertions that Forbus removed C.R. and J.R. from Rosenbaum's custody significantly mischaracterize the events at issue. The children were not taken into protective custody; they were walked a short distance from the location of the arrest and released to their mother, with Rosenbaum's permission. (Probable Cause Aff., MSJ Ex. B (#23-2).) The children were removed from Rosenbaum's presence, certainly, because Rosenbaum was being transported to jail. But Plaintiffs have not presented, nor have we discovered, any authority supporting the notion that releasing the child of an individual who is being arrested into the care of the child's other parent, with the arrested parent's permission, even if the arrest is without probable cause, constitutes a violation of the arrested parent's constitutional rights relating to custody of the

13

child.  As such, we conclude that Rosenbaum's constitutional rights were not violated in this regard.

### 2. Plaintiffs' Constitutional Rights Were Not Violated by the Statements Made to and Questions Asked of C.R. and J.R.

Plaintiffs assert that the questions asked of C.R. and J.R., as well as the "disparaging" statements made about their father, amount to an unconstitutional interference with Plaintiffs right to "family integrity."  None of the authority presented by Plaintiffs in support of this assertion, however, deals with a situation that more than remotely resembles that of the present case.  See Santosky v. Kramer, 455 U.S. 745, 753 (1982) (due process requires clear and convincing evidence before a state may terminate parental rights); Stanley v. Illinois, 405 U.S. 645, 651 (1972) (unwed father has due process right to hearing on his fitness as a parent before his children could be taken from him by the state after the death of the children's mother); Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925) (stating that a compulsory education act "unreasonably interferes with the liberty of parents . . . to direct the upbringing and education of children under their control"); Meyer v. Nebraska, 262 U.S. 390, 400 (holding English-only education law unconstitutional).

Indeed, such authority as we have discovered suggests that even much more disturbing police conduct than that which occurred in the present case would not rise to the level of a constitutional violation.  See United States v. Orso, 275 F.3d 1190, 1191 (2001) ("stating that "not everything that this court might consider 'bad' or 'improper' is accordingly unconstitutional").  In Orso, the Ninth

14

Circuit cites approvingly Pittsley v. Warish, 927 F.2d 3 (1st Cir. 1991), a case in which the First Circuit found no constitutional violation where a police officer had refused, using vulgar language, to allow the children of a Plaintiff to give their father a hug and a kiss goodbye as he was being arrested, and had previously threatened the children that "if we ever see your father on the streets again, you'll never see him again." Orso, 275 F.3d at 1191; Pittsley, 927 F.2d at 5-7.  Here, the remarks and questions Defendants are alleged to have addressed to C.R. and J.R. may have been inappropriate — at least one of the Defendants has conceded as much.  (See P.'s Opp. at 9 (quoting from Defendant Haley's deposition) (#28).)  They are, however, an order of magnitude less objectionable than the comments at issue in Pittsley, which were found not to rise to the level of a constitutional violation.

   In short, it does not appear that the facts alleged could give rise to a violation of Plaintiffs' right to familial integrity, or of Rosenbaum's liberty interest in rearing his children without unreasonable government interference.  As such, Plaintiffs' second cause of action fails.

### IV. Supplemental Jurisdiction

   Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity.  Acri v. Varian Assocs., Inc.,

15

114 F.3d 999, 1001 (9th Cir. 1997).  In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

As stated above, we will grant summary judgment to Defendants on Plaintiffs' first and second causes of action; all of Plaintiffs' remaining claims arise under state law.  The principle of comity therefore weighs heavily in favor of deference to the state court. We have not previously decided any substantive motions in this case and have had only minimal involvement in the matter thus far. Concerns of judicial economy, therefore, do not weigh in favor of retaining jurisdiction over the state law claims.  Nor is there any indication that the state law claims could not be fairly and conveniently tried in the Nevada state courts.  We will, therefore, decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### V. Conclusion

Rosenbaum's arrest was not properly supported by probable cause.  Nevertheless, Defendants are entitled to qualified immunity with regard to that arrest, because Nevada law was not clearly established, so that a reasonable police officer would understand that such an arrest was unlawful.  Plaintiffs' substantive and procedural due process right to familial integrity and liberty

interest in rearing his children without unreasonable government interference were not violated.  We decline to exercise jurisdiction over Plaintiffs' remaining claims, which arise under Nevada law.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion for summary judgment (#23) is **GRANTED** on the following basis: Defendants are entitled to summary judgment on Plaintiffs' first and second causes of action; pursuant to 28 U.S.C. § 1367(c)(3), we decline to exercise supplemental jurisdiction over Plaintiffs' remaining claims, which arise under Nevada state law.

The Clerk shall enter judgment accordingly.

DATED: February 25, 2010.

_Edward C. Reed._
_____
UNITED STATES DISTRICT JUDGE

17